ZACHARY, Judge.
 

 *576
 
 Respondent-mother appeals from an order awarding custody of her minor children, Y.I. ("Yvan") and J.I. ("John"), to their father, "Jasper."
 
 [1]
 
 We affirm in part, vacate in part and remand.
 

 John was born in April 2008, and Yvan was born in September 2009. On 3 November 2016, the Union County Division of Social Services ("DSS") received a report that the children had witnessed Respondent-mother's boyfriend, "Alex," punching, kicking, and dragging Respondent-mother. Both children also reported having been physically abused by Alex. On 27 March 2017, DSS received another report that Respondent-mother had injuries to her right eye and right arm that resulted from being assaulted by Alex. A social worker helped Respondent-mother and the children get admitted to a domestic violence shelter, but Respondent-mother left the shelter with the children within hours after their admission and returned to Alex's residence.
 

 On 28 March 2017, DSS filed juvenile petitions alleging that the children were neglected and dependent. DSS received nonsecure custody of the children. Following a 24 May 2017 adjudicatory and dispositional hearing, the trial court entered its 26 June 2017 order adjudicating the children to be neglected and dependent and ordering Respondent-mother,
 
 inter alia
 
 , to comply with her case plan, complete a psychological evaluation and comply with any resulting recommendations, complete domestic violence counseling, and engage in parenting classes.
 

 *503
 
 The trial court held a permanency planning hearing on 7 March 2018, after which the court entered an order on 10 April 2018 awarding custody of the children to Jasper, as well as relieving DSS and the attorneys of record of any further responsibility in the case. Respondent-mother filed written notice of appeal on 19 April 2018.
 

 *577
 

 Standard of Review
 

 "[Appellate] review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and whether the findings support the conclusions of law. If the trial court's findings of fact are supported by any competent evidence, they are conclusive on appeal."
 
 In re P.O.
 
 ,
 
 207 N.C. App. 35
 
 , 41,
 
 698 S.E.2d 525
 
 , 530 (2010) (citations omitted).
 

 Award of Custody
 

 Respondent-mother first contends that the trial court erred in failing to return custody of the children to her. We disagree.
 

 At any permanency planning hearing, the Juvenile Code permits the trial court to "place the child in the custody of either parent ... found by the court to be suitable and found by the court to be in the best interests of the juvenile." N.C. Gen. Stat. § 7B-906.1(i) (2017). "We review a trial court's determination as to the best interest of the child for an abuse of discretion."
 
 In re J.H.
 
 ,
 
 244 N.C. App. 255
 
 , 269,
 
 780 S.E.2d 228
 
 , 238 (2015) (citation and quotation marks omitted).
 

 In the present case, the trial court made the following findings relevant to its determination that custody with Jasper was in the children's best interests:
 

 8. Some of the issues that led to the removal of the children from the home of [Respondent-mother] ... included Domestic Violence and Mental Health Concerns. The court has consistently ordered [Respondent-mother] to participate in Domestic Violence Counseling, Address the Mental Health concerns and participate in parenting classes.
 

 9. [Respondent-Mother] has made it clear to DSS that she does not intend to participate in parenting classes.
 

 10. [Respondent-mother] participated in a psychological assessment with Dr. Popper which was completed in October of 2017. [Respondent-mother] has been identified as having PTSD which she attributes to the Domestic Violence between herself and [Jasper].
 

 11. Dr. Popper is of the opinion that [Respondent-mother] is reluctant to examine herself as to what steps she can take, because she is a victim of Domestic Violence.
 

 *578
 
 12. [Respondent-mother] is reluctant to engage in Domestic Violence Counseling and Parenting Classes because Dr. Popper did not specifically recommend those services. [Respondent-mother] has not made substantial progress to address the issues that caused the juveniles to be removed from her home.
 

 ....
 

 15. The juveniles were placed with [their paternal aunt] from September 8, 2017 until February 14, 2018 at which time they were moved to the home of [Jasper].
 

 16. Since being [with Jasper] in Catawba County the juveniles have made significant progress with their educational needs. [John] is no longer in need of an Individual Education Plan.
 

 17. [Jasper] did not originally participate in this matter because he was not aware that the juveniles were in Foster Care. He resided in Mexico.
 

 18. When [Jasper] learned that the juveniles were in Foster Care in or around August of 2017, he returned to North Carolina and immediately began working with DSS on an Out of Home Services Agreement.
 

 19. [Jasper] has completed the Triple P Parenting program and has completed counseling to address prior domestic violence with [Respondent-mother].
 

 ....
 

 23. [Respondent-mother] is not making adequate progress within a reasonable period of time under the plan.
 

 *504
 
 24. [Jasper] is making adequate progress within a reasonable period of time under the plan.
 

 25. [Respondent-mother] is not actively participating in or cooperating with the plan, DSS, and the guardian ad litem for the juveniles.
 

 26. [Jasper] is actively participating in or cooperating with the plan, DSS, and the guardian ad litem for the juveniles.
 

 27. (A) The juveniles' return [to] the home of [Respondent-mother] would be contrary to the juveniles' best interest.
 

 *579
 
 ....
 

 28. The following progress has been made toward alleviating or mitigating the problems that necessitated placement: [Jasper] has completed parenting classes, followed all activities outlined in his Out of Home Services Agreement and secured safe and stable housing. [Respondent-mother] has completed a comprehensive phycological [sic] exam.
 

 ....
 

 33. The court has been presented sufficient evidence and thus finds that the juveniles will receive proper care and supervision in a safe home if they are allowed [to] return to the legal and physical custody of [Jasper].
 

 34. It is in the juveniles' best interest for their custody to be granted to [Jasper].
 

 Respondent-mother first appears to challenge the statement in finding 8 that domestic violence was one of the issues that led to the removal of the children from her home. Setting aside the fact that Respondent-mother fails to specifically challenge this statement as unsupported by the evidence, we nonetheless find support in the trial court's 26 June 2017 adjudicatory order, wherein the court stated that it was adjudicating the children to be neglected juveniles, based in part on the fact that Respondent-mother "has been the victim of Domestic Violence perpetrated by the father of the juveniles, [Jasper]." The order further stated that Respondent-mother was "in need of domestic violence counseling as [a] caretaker[ ] of the juveniles." At the permanency planning hearing, a DSS social worker confirmed that "part of the concern when these children came into DSS custody was domestic violence altercations between [Respondent-mother] and [her domestic partner.]" Thus, the challenged statement is supported by the trial court's 26 June 2017 order and testimony from the permanency planning hearing.
 

 Respondent-mother further contends that findings 12, 23, and 26 "are contrary to the evidence presented[,]" but wholly fails to support her contention with explanation or citation to the record. To the extent Respondent-mother purports to challenge these findings, she has abandoned her challenge.
 
 See
 
 N.C.R. App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned."). Respondent-mother does not purport to challenge any of the trial court's other findings, and those findings are therefore binding on appeal.
 

 *580
 

 In re C.B.
 
 ,
 
 180 N.C. App. 221
 
 , 223,
 
 636 S.E.2d 336
 
 , 337 (2006),
 
 aff'd per curiam
 
 ,
 
 361 N.C. 345
 
 ,
 
 643 S.E.2d 587
 
 (2007).
 

 The trial court's findings demonstrate that once Jasper learned of the children's removal from the home, he immediately began working with DSS and had completed all that was asked of him by the time of the 10 April 2018 permanency planning hearing. The children were placed with Jasper in February 2018 and thereafter "made significant progress with their educational needs." While Respondent-mother participated in a psychological exam, she had not completed domestic violence or parenting classes. At the time of the hearing, Respondent-mother was not actively participating in her case plan and was not working with DSS or the children's guardian
 
 ad litem
 
 . In light of these findings, we cannot say that the trial court abused its discretion in determining that it was in the children's best interest to award custody to Jasper.
 

 Retention of Juvenile Jurisdiction
 

 Respondent-mother next contends that the trial court erred in failing to transfer the case to a Chapter 50 action. While Respondent-mother frames her argument in this way, the substance of her argument appears to be that the trial court erred in failing to make a specific finding as to whether
 
 *505
 
 jurisdiction should be retained. Again, we disagree.
 

 N.C. Gen. Stat. § 7B-911(a) provides that, "[u]pon placing custody with a parent or other appropriate person, the court shall determine whether or not jurisdiction in the juvenile proceeding should be terminated and custody of the juvenile awarded to a parent or other appropriate person pursuant to [Chapter 50]." N.C. Gen. Stat. § 7B-911(a) (2017). The statute does not expressly require that the court make a finding as to whether jurisdiction in the juvenile proceeding should be terminated and the matter transferred to a Chapter 50 action. However, in the event the trial court chooses to do so, N.C. Gen. Stat. § 7B-911(b) and (c) specify the findings the court must make and procedures it must follow in order to terminate jurisdiction in the juvenile proceeding and transfer the matter to a Chapter 50 civil case. N.C. Gen. Stat. § 7B-911(b), (c) (2017).
 

 In this case, the trial court did not terminate its jurisdiction in the order and specifically informed the parties of their right to file a motion requesting that the court review the visitation plan, as is required when the trial court retains jurisdiction.
 
 See
 
 N.C. Gen. Stat. § 7B-905.1(d) (2017) ("If the court retains jurisdiction, all parties shall be informed of the right to file a motion for review of any visitation plan[.]"). Respondent-mother does not contend that the trial court erroneously retained jurisdiction, or that the court failed to follow statutory requirements in doing
 
 *581
 
 so. Respondent-mother claims that "[t]he court did not analyze whether or not the case should be transferred to a Chapter 50 proceeding[,]" but provides no support for the assertion. Accordingly, Respondent-mother does not present a meritorious challenge to the trial court's retention of jurisdiction.
 

 Award of Visitation
 

 Lastly, Respondent-mother contends that the trial court erred in ordering that visitation occur at a supervised visitation center without addressing the cost, who would bear the responsibility for payment of that cost, and whether Respondent-mother had the means to do so. We agree.
 

 N.C. Gen. Stat. § 7B-905.1 provides, in pertinent part:
 

 (a) An order that removes custody of a juvenile from a parent, guardian, or custodian or that continues the juvenile's placement outside the home shall provide for appropriate visitation as may be in the best interests of the juvenile consistent with the juvenile's health and safety. The court may specify in the order conditions under which visitation may be suspended.
 

 ....
 

 (c) If the juvenile is placed or continued in the custody or guardianship of a relative or other suitable person, any order providing for visitation shall specify the minimum frequency and length of the visits and whether the visits shall be supervised. The court may authorize additional visitation as agreed upon by the respondent and custodian or guardian.
 

 N.C. Gen. Stat. § 7B-905.1(a), (c) (2017).
 

 In the present case, the trial court ordered that:
 

 Visitation shall take place as follows: [Respondent-mother] shall have visitation with the juveniles 2 times per month for a minimum of one hour each time, supervised by either Gaston County Visitation Center or Carolina Solutions. If arrangements for the visitations do not take place within the next 30 days, then the parties shall motion the case back on for the court to address a visitation plan for [Respondent-mother].
 

 *582
 
 While the trial court adhered to the statutory requirements by setting forth "the minimum length and frequency of the visits and whether the visits shall be supervised[,]" the trial court's order is not specific enough to allow this Court to determine whether the trial court abused its discretion in setting the conditions of visitation. In
 
 In re J.C.
 
 ,
 
 368 N.C. 89
 
 ,
 
 772 S.E.2d 465
 
 (2015) (per curiam), our Supreme Court remanded for additional findings of fact where "[t]he district court made no findings whether [the] respondent mother was able to pay for supervised visitation once ordered[,]" reasoning that "[w]ithout such findings, our appellate courts are unable to determine if the trial court abused its discretion by requiring as a condition of
 
 *506
 
 visitation that visits with the children be at [the] respondent mother's expense."
 

 Id.
 

 In this case, the trial court did not determine what costs, if any, would be associated with conducting supervised visitation at Gaston County Visitation Center or Carolina Solutions. Given that the trial court relieved DSS of any further responsibility in the case, it appears likely that Respondent-mother would be required to pay for visitation, although the court failed to specify who was to bear any such expense. In the event the trial court intended for Respondent-mother to bear the cost of visitation, the court failed to determine whether Respondent-mother had the ability to pay. As a result, we vacate the portion of the permanency planning order regarding visitation and remand for additional findings of fact, addressing whether Respondent-mother is to bear any costs associated with conducting visits at the supervised visitation centers, and if so, whether Respondent-mother has the ability to pay those costs.
 

 Conclusion
 

 In sum, we vacate the portion of the order establishing a visitation plan and remand for further findings of fact. The trial court may, in its discretion, hold additional hearings in this matter to address these issues. The remainder of the trial court's order is affirmed.
 

 AFFIRMED IN PART; VACATED IN PART AND REMANDED.
 

 Judges CALABRIA and TYSON concur.
 

 [1]
 

 Pseudonyms are used throughout the opinion to protect the identity of the juveniles and for ease of reading.